IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:15-CV-86-FL

| | | |
|---|---|---|
| LAUREN BURCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NC DEPARTMENT OF PUBLIC | ) | |
| SAFETY; STATE BUREAU OF | ) | |
| INVESTIGATION DIVISION; | ) | |
| ALCOHOL LAW ENFORCEMENT | ) | |
| BRANCH; JOHN LEDFORD, | ) | |
| individually and in his official capacity as | ) | |
| the Director of the Division of ALE; | ) | |
| MARK SENTER, individually and | ) | |
| officially as the Branch Head of the | ) | |
| NCDPS/ALE; KENDALL PIKE, | ) | |
| individually and in his official capacity as | ) | |
| Assistant Deputy Director of ALE; ROY | ) | |
| COOPER, in his official capacity as the | ) | |
| Attorney General of North Carolina; and | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss, made pursuant to Federal

Civil Procedure Rule 12. (DE 24). Plaintiff filed a response to defendants' motion (DE 34), and a

notice of voluntary dismissal with regard to certain claims. (DE 35). The issues raised have been

briefed fully, and in this posture are ripe for ruling. For the reasons that follow, defendants' motion

to dismiss is granted with respect to plaintiff's claims for violations of due process and equal

protection under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. The

court declines to exercise supplemental jurisdiction over plaintiff's remaining claims, and remands them to state court.

## STATEMENT OF THE CASE

Plaintiff Lauren Burch commenced this action against defendants in the Superior Court of Cateret County, North Carolina, on April 20, 2015. (DE 3-1). Defendants filed a notice of removal, and the action was removed to this court on June 3, 2015. (Id.) The complaint names as defendants the North Carolina Department of Public Safety ("DPS"); the State Bureau of Investigation Division ("SBI"); the Alcohol Law Enforcement Branch ("ALE"); the North Carolina Department of Justice ("NCDOJ") (collectively, "defendant state agencies");[1] John Ledford, individually and in his official capacity as the Director of ALE; Mark Senter, individually and in his official capacity as Branch Head of DPS and ALE; Kendall Pike, individually and in his official capacity as Assistant Deputy Director of ALE (collectively, "individual defendants"); and Roy Cooper, in his official capacity as the Attorney General of North Carolina. Plaintiff asserts that defendants discriminated against her in the course of her public employment, and that defendants' actions violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, Article I of the North Carolina Constitution, 42 U.S.C. § 1983 ("§ 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and North Carolina state law prohibitions on civil conspiracy and breach of contract.

On June 22, 2015, defendants filed the instant motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). Defendants argue that plaintiff fails to state

---

[1] The relationship among defendant state agencies changed on July 1, 2014. 2014-100 N.C. Sess. Laws 164, 181. Prior to that date, SBI operated under the authority of NCDOJ, and ALE operated under the authority of DPS. Id. Since that date, ALE operates under the authority of SBI, and SBI operates under the authority of DPS; none of the named agencies operate under the authority of NCDOJ. Id.

2

claims under the U.S. and N.C. Constitutions, § 1983, Title VII, and for civil conspiracy. Defendants assert defenses of sovereign immunity and public official immunity regarding the constitutional claims, as well as qualified immunity as to the § 1983 claim. In addition, defendants contend plaintiff's claim for breach of contract is without merit for failure to follow procedure required by the North Carolina State Personnel Act. With regard to defendants Cooper and the NCDOJ, defendants argue that all claims are unavailing where no factual allegations refer to defendant Cooper, and where plaintiff's employer, defendant ALE, never operated under control of the NCDOJ. Lastly, defendants assert that theories of res judicata and estoppel bar plaintiff's Title VII and breach of contract claims.

On August 3, 2015, plaintiff filed a response to defendants' motion to dismiss, followed by an amended notice of voluntary dismissal. In the amended notice, plaintiff voluntarily dismisses the Title VII claim and all claims against defendant Cooper. In addition, plaintiff dismisses claims made under the Due Process and Equal Protection Clauses of the U.S. Constitution as they relate to defendant state agencies and individual defendants in their official capacities.

In her response to defendants' motion to dismiss, plaintiff expands the Due Process Clause argument to encompass both substantive and procedural due process violations, and reasserts a class-of-one theory in support of equal protection claims under the U.S. and N.C. Constitutions. Plaintiff also argues against application of sovereign immunity, public official immunity, and qualified immunity. Finally, plaintiff contends that defendants' theories of res judicata and estoppel are inappropriate at this stage. Plaintiff's response does not address defendants' arguments for dismissal of the civil conspiracy claim, the breach of contract claim, and defendant NCDOJ. Defendants filed no reply to plaintiff's response.

## STATEMENT OF FACTS

From 2006 to 2015, plaintiff worked as a special agent for ALE. (DE 3-1 ¶ 2). After plaintiff became pregnant in early 2012, she submitted written notice of the pregnancy to her immediate supervisor on March 16, 2012. (Id. ¶ 53). In turn, plaintiff's supervisor relayed the notice to ALE's supervising officers, including defendant Senter. (Id. ¶ 54). For at least four previous pregnant special agents, ALE had employed a practice whereby it allowed the special agent to remain on full duty status while accommodating at the special agent's request any restrictions for the health and well-being of the agent and the unborn child. (Id. ¶ 19–46). In effect, this practice created a de facto light duty regime that did not require pregnant special agents to request placement on formal limited duty status. (Id. ¶ 15).

Formal limited duty status required special agents to surrender their badges and guns, cease using assigned state vehicles, and no longer count travel time as working time. (Id. ¶ 16). Therefore, application of ALE's de facto light duty regime benefitted pregnant special agents because they were able to avoid the disadvantages of formal limited duty status. (Id. ¶ 17). Plaintiff alleges that defendants denied her that benefit by refusing to apply ALE's de facto light duty regime to her while she was pregnant, thereby forcing her to request formal limited duty status.

Plaintiff asserts that defendants Ledford, Senter, and Pike (the "Command Staff"), were motivated by personal ill will towards plaintiff. (Id. ¶ 56). Plaintiff describes two prior incidents in which defendant Senter played a role in disciplinary proceedings against plaintiff. (Id. ¶¶ 67, 108). Plaintiff contested the charges and prevailed in both instances, the most recent of which concluded in February 2012. (Id. ¶ 67, 108, 118).

ALE policy required pregnant special agents to obtain from their doctor and provide to their

4

supervisor monthly status reports on their pregnancy. (Id. ¶ 127). If a pregnant special agent wished to restrict her activities under the de facto light duty regime, ALE policy required a doctor's note advising those restrictions. (Id. ¶ 128). If a pregnant special agent wished to be placed on formal limited duty, ALE policy required a written request for such placement and input from the ALE medical director. (Id. ¶¶ 138–39).

In April 2012, plaintiff obtained from her doctor and provided to her supervisor a note advising that "it is appropriate for [plaintiff] to avoid any situations that would put her at risk for physical altercations," and that "[i]f she is going to be in a vehicle for more than three-four hours, I would recommend that she have the opportunity to get out and stretch her legs for a few minutes." (Id. at 29). Shortly after receiving an abbreviated version of this note,[2] defendant Senter forwarded it to Dr. Thomas Griggs, the medical director for ALE and the State Highway Patrol. (Id. ¶ 137). Dr. Griggs replied to defendant Senter that the note was "consistent with 'limited duty.'" (Id. at 35).

Defendant Senter then consulted with defendant Pike to consider placing plaintiff on formal limited duty assignment. (Id. ¶ 144). Although defendant Senter was familiar with ALE's de facto light duty regime (see id. ¶ 44), he communicated to plaintiff that unless she submitted a written request to be placed on formal limited duty, she would be placed on leave without pay in light of her doctor's restrictions. (Id. ¶¶ 152–53). Plaintiff requested that she be allowed to seek a new letter from her doctor clarifying that her doctor's advice was general and not specifically prohibitive, but defendant Senter denied this request. (Id. ¶ 155). Later that day, plaintiff submitted a written request for formal limited duty assignment. (Id. at 37).

---

[2] Due to technological difficulties at the doctor's office, transfer of the full note was delayed and an abbreviated version of the note was transmitted on April 30, 2012. (DE 3-1, 31, 33). Plaintiff suggests that the language of the full note was less restrictive than the language of the abbreviated note. (Id. ¶ 145). However, the Command Staff received both documents before taking the complained of actions against plaintiff. (Id.).

On May 2, 2012, defendant Ledford approved plaintiff's limited duty request and assigned her to work at ALE Headquarters in Raleigh, North Carolina. (Id. at 39). At that time, plaintiff's work assignment was in New Bern, North Carolina, and she was registered to deliver her child at a hospital in Morehead City, North Carolina. (Id. at 43). Plaintiff found the assignment to Raleigh grossly unreasonable because it required a daily, six-hour round-trip commute, using her personal vehicle at her own expense, and provided no work credit for travel time. (Id. ¶ 159, 162). On May 3, 2012, plaintiff submitted to defendant ALE another note from her doctor advising that she limit her commute to "no more than 1 1/2 hours to work and from work." (Id. at 41). The Command Staff declined to adjust plaintiff's work assignment despite receiving her doctor's note. (Id. ¶ 161). Plaintiff felt unable to report to Raleigh, and instead felt forced to exhaust her accumulated vacation and sick leave. (Id. ¶¶ 164–65).

With her vacation and sick leave period set to expire on October 12, 2012, plaintiff made a second request to ALE on October 10 for her formal limited duty assignment to be relocated to New Bern. (Id. at 43). In the request, plaintiff explained that she was 36-weeks pregnant and registered at a hospital in Morehead City. (Id.). Defendants Ledford and Senter refused this request and declined to modify plaintiff's Raleigh work assignment. (Id. ¶ 169).

Plaintiff then requested and was granted an unpaid leave of absence, which preserved her employment status with ALE, but rendered her ineligible for employment health care benefits. (Id. ¶ 170, 172). Plaintiff delivered her child, and remained on unpaid leave until December 21, 2012, at which point she returned to full duty status as a special agent with ALE. (Id. ¶ 173).

## COURT'S DISCUSSION

A.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999).  A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (internal citations omitted).

A court may not consider matters outside the pleadings without converting a Rule 12(b)(6) motion to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  However, documents attached to the complaint and those incorporated in it by reference are deemed part of the pleadings and therefore may be considered without converting a Rule 12(b)(6) motion.  See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,

7

367 F.3d 212, 234 (4th Cir. 2004); see also Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, the court properly may consider plaintiff's exhibits attached to the complaint. These include notes from plaintiff's doctor concerning plaintiff's pregnancy (DE 3-1 at 28, 30, 40), as well as correspondence exchanged among plaintiff, defendants, and other ALE employees. (Id. at 26, 32, 34, 36, 38, 42).

In addition to Rule 12(b)(6), defendants base their motion to dismiss on Rules 12(b)(1) and 12(b)(2). Defendants argue Rule 12(b)(2) applies where plaintiff fails to allege facts establishing defendants Ledford, Senter, and Pike as "persons" for purposes of § 1983. However, these named defendants are alleged to be individuals currently or formerly employed by various defendant state agencies, and defendants fail to offer any argument otherwise. Therefore, application of Rule 12(b)(2) is inapposite with regard to those claims the court addresses here.

Defendants argue for application of Rule 12(b)(1) on the bases of sovereign and public official immunity as they apply to defendant state agencies and individual defendants in their official capacities. However, plaintiff voluntarily dismisses claims made pursuant to the U.S. Constitution as to defendant state agencies and individual defendants in their official capacities. The court does not apply Rule 12(b)(1) where, for the reasons that follow, the court does not reach defendants' arguments regarding those bases.

B.     Analysis

1.     Due Process Claims Under the U.S. Constitution

Plaintiff alleges violations of the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "Due process contains both substantive and procedural components. Procedural due process

prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." <u>Snider Int'l Corp. v. Town of Forest Heights</u>, 739 F.3d 140, 145 (4th Cir. 2014).

Procedural and substantive due process claims require different showings. Procedural due process "protection of property is a safeguard of the security interests that a person has already acquired in specific benefits." <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 576 (1972). "It is a guarantee of fair procedures, typically notice and an opportunity to be heard." <u>Mora v. City of Gaithersburg</u>, 519 F.3d 216, 230 (4th Cir. 2008) (quotations omitted). In contrast, substantive due process "is a far narrower concept than procedural; it is an absolute check on certain government actions notwithstanding the fairness of the procedures used to implement them." <u>Roth</u>, 408 U.S. at 576 (citing <u>Love v. Pepersack</u>, 47 F.3d 120, 122 (4th Cir. 1995)).

In the complaint, plaintiff captions her Due Process claim as one for violations of the right to substantive due process. However, in her response, plaintiff asserts that she has set forth facts sufficient to support a claim for procedural due process violations as well. (DE 34, 10). Construing the complaint liberally, the court treats plaintiff as asserting both types of due process claims. Each is examined in turn below.

a.     Procedural Due Process Claim

Plaintiff asserts a procedural due process claim against individual defendants in their individual capacities. Plaintiff argues that violation of her procedural due process rights occurred, where she was given no opportunity to contest in advance defendants' adverse employment actions against her, and where she was deprived of her right to contest those actions afterward.

To demonstrate a procedural due process violation, a plaintiff must show that she has a

constitutionally protected property or liberty interest, and that she was deprived of that interest by the state without due process of law. Roth, 408 U.S. 564, 569 (1972); Tri-Cty. Paving, Inc. v. Ashe County., 281 F.3d 430, 436 (4th Cir. 2002). Assuming a plaintiff has a constitutionally protected interest, "courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state" in order to determine the sufficiency of due process. Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

In examining pre-deprivation process, courts begin with the nature of the property or liberty interest. Id. at 98; see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985); Mathews v. Eldridge, 424 U.S. 319, 333–35 (1976). Although an employee may have a constitutionally protected property interest in employment, that interest "does not extend to the right to possess and retain a particular job or to perform particular services." Fields, 909 F.2d at 97; see Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1141 (4th Cir. 1990); Royster v. Bd. of Trs. of Anderson Cty. Sch. Dist. No. Five, 774 F.2d 618, 621 (4th Cir. 1985). The Fourth Circuit Court of Appeals is "reluctant to recognize multiple property interests within the same employment relationship," describing such disfavored interests as "entitlements within entitlements to perform specific functions." Fields, 909 F.2d at 97. Instead, the property interest is in continued employment more generally. Id.

In such circumstances, a court may narrow its evaluation of the sufficiency of procedural protection to focus on the locus of dispute between employer and employee. Id.; Loudermill, 470 U.S. at 545 ("The formality and procedural requisites . . . can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."). For example, in a case involving termination of a federal employee, there may be sufficient procedural due process "where

10

the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." Loudermill, 470 U.S. at 542 (describing Arnett v. Kennedy, 416 U.S. 134 (1974)). In Barry v. Barchi, 443 U.S. 55 (1979), the Supreme Court found sufficient pre-deprivation due process where the plaintiff "was not given a formal hearing prior to the suspension of his license, [but] he was immediately notified of the alleged [cause for the suspension], 16 days elapsed prior to the imposition of the suspension, and he was given more than one opportunity to present his side of the story." Barry, 443 U.S. at 65. In summary, "the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." Sciolino v. City of Newport News, 480 F.3d 642, 649 (4th Cir. 2007) (quotations omitted).

Although provision of some pre-deprivation due process is the preferred constitutional course, procedural due process analysis is not complete without consideration of the post-deprivation remedies provided by a state. Fields, 909 F.2d at 97, 99 ("Predeprivation procedures are the initial check against mistaken decisions, but they need not definitely resolve the propriety of the discharge.") (quotations omitted); Zinermon, 494 U.S. at 125; Loudermill, 470 U.S. at 545–47. In this stage of the analysis, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property by State employees do not violate due process until and unless the State refuses to provide a suitable post-deprivation remedy); see Mora, 519 F.3d 216, 230–31 (4th Cir. 2008).

Post-deprivation remedies include claims for breach of contract, Bennet v. Monette, 507 F. Supp. 2d 514, 518–19 (E.D.N.C. 2007); Stewart v. Hunt, 598 F. Supp. 1342, 1356 (E.D.N.C. 1984),

11

civil conspiracy, <u>Fields</u>, 909 F.2d at 98, and claims made pursuant to a state constitution. <u>Id.</u> While post-deprivation state law remedies must be available, they need not be pursued in order to demonstrate the possibility for post-deprivation due process. <u>See</u> <u>Mora</u>, 519 F.3d at 230 ("[The plaintiff] has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them. The state courts are open to him."); <u>Dunn v. Town of Emerald Isle</u>, 722 F. Supp. 1309, 1312 (E.D.N.C. 1989) ("The plaintiff's procedural due process claim also fails because he had adequate state law remedies that he could have pursued in state court.").

Plaintiff asserts three interests under the Due Process Clause: a property interest in her accumulated vacation and sick leave; a property interest in the benefits afforded by defendant ALE's pregnancy policy; and a liberty interest in "the right to bear children without being subjected therefore to arbitrary, coercive, and vindictive government action." (DE 34, 9). She sets forth facts showing that defendants made a series of decisions causing plaintiff to take two periods of leave: the first exhausting her accumulated vacation and sick leave when she was unable to make the six-hour commute to her new assignment in Raleigh, and the second consisting of unpaid leave without medical benefits when her requests for reassignment again were denied. The first period implicated her first alleged property interest, and both periods implicated her other two alleged interests.

Plaintiff first notified defendant ALE of her pregnancy through an oral report to her immediate supervisor on March 5, 2012. Defendant Senter requested additional information from plaintiff's supervisor, and on April 23, 2012, plaintiff's doctor dictated a note recommending certain medical considerations in the context of plaintiff's work. Defendant Senter received an abbreviated version of the note on April 30, 2012. Later that same day, after consulting with the ALE medical

doctor and members of Command Staff, defendant Senter instructed plaintiff to submit a written request for formal limited duty assignment in light of her doctor's recommendations. At some point thereafter, Command Staff received the doctor's full note. Having received both documents, defendant Senter denied plaintiff's subsequent request to submit a third note from her doctor.

Plaintiff then requested formal limited duty, and on May 2, 2012, was assigned from a duty station in New Bern to a duty station in Raleigh. Once again, plaintiff contested the work assignment, and on the following day she submitted another note from her doctor recommending against an overly long commute. The Command Staff defendants retained the work assignment despite the third note. Rather than undertake the six-hour round-trip commute, plaintiff began a period of vacation and sick leave.

Before the first leave period expired on October 12, 2012, plaintiff again submitted a written request for reassignment. She explained the reasons for her request, and provided a fourth note from her doctor. The Command Staff defendants refused plaintiff's request for reassignment, instead granting plaintiff's subsequent request for a second period of leave. Although this second leave period did not affect plaintiff's employment status with defendant ALE, it was without pay and medical benefits.

In light of the foregoing alleged facts, plaintiff received pre-deprivation due process commensurate with the limited nature of her alleged property and liberty interests. Plaintiff's argument that she is entitled to various interests embedded within a de facto light duty work regime resembles the one rejected by the Fourth Circuit Court of Appeals in Fields: "His argument implies that within the property interest in employment created by state law exist numerous entitlements within entitlements to perform specific functions." Fields, 909 F.2d at 98. Therefore, the limited

13

nature of plaintiff's alleged interests aligned with defendants' provision of correspondingly limited pre-deprivation due process.

The locus of plaintiff's dispute with defendants was her pregnancy's effect upon specific work-related tasks, such as driving. Accordingly, defendant ALE's pre-deprivation process focused upon plaintiff's pregnancy, beginning when defendant Senter requested additional information regarding plaintiff's pregnancy. The process afforded plaintiff resembled the process found sufficient in Arnett and Barry. Here, as in those cases, plaintiff had access to the material upon which defendants' employment decisions were based because plaintiff herself provided the relevant doctor notes. See Arnett, 416 U.S. at 134. In addition, plaintiff had opportunity to respond to those decisions orally and in writing, over the course of three days prior to her first period of leave, and over the course of at least four months prior to her second period of leave. See Barry, 443 U.S. at 65 (finding sixteen days sufficient). During that time, plaintiff was able to present additional doctor notes akin to "rebuttal affidavits," and she was given more than one opportunity to present her point of view. See Barry, 443 U.S. at 65; Arnett, 416 U.S. at 134. Therefore, defendants provided plaintiff with sufficient pre-deprivation due process.

With regard to post-deprivation due process, plaintiff still has available to her a number of state law remedies. Plaintiff initially filed this action in the Superior Court of Carteret County, North Carolina, and she maintains a number of state law causes of action. In particular, plaintiff retains claims for breach of contract and civil conspiracy, as well as claims under the N.C. Constitution for alleged violations of her rights to substantive due process, procedural due process, and equal protection. These claims demonstrate suitable state law remedies for plaintiff's alleged due process deprivation. See Fields, 909 F.2d at 98; Bennet, 507 F. Supp. 2d at 518–19.

14

Therefore, plaintiff's federal procedural due process claim must be dismissed, where she was afforded pre-deprivation due process commensurate with the degree of her claimed entitlements, and where she has available to her adequate post-deprivation state law remedies. See Dunn, 722 F. Supp. at 1312.

           b.       Substantive Due Process Claim

Plaintiff asserts a substantive due process claim against individual defendants in their individual capacities. Federal substantive due process rights serve as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions." Front Royal and Warren Cty. Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 287–88 (4th Cir. 1998) (quotations omitted). "[G]overnmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Id.

For purposes of substantive due process analysis, courts first must determine whether a property interest represents a fundamental right "rooted in the traditions and conscience of our people." Reno v. Flores, 507 U.S. 292, 302 (1993) ("Substantive due process analysis must begin with a careful description of the asserted right.") (quotations omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

The right to continued public employment is created by state contract law, or other sources besides the Constitution, and thus does not implicate substantive due process. See Myers v. Town of Landis, 957 F. Supp. 762, 770 (M.D.N.C. 1996); Logar v. W. Va. Univ. Bd. of Governors, No. 1:13-CV-145, 2013 WL 4501052, (N.D. W. Va. Aug. 21, 2013) ("[M]ost Circuit Courts of Appeal

have declined to find that a right to continued public employment is a fundamental property interest entitled to federal substantive due process protection.") (collecting cases). Such a state law contract right "bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229–30 (1985) (Powell, J., concurring) (describing a state law property right derived from enrollment at a public university).

For example, in Pittman v. Wilson County, 839 F.2d 225 (4th Cir. 1988), the court found that "personnel rules and regulations merely supplied internal administrative guidelines and did not rise to the level of an ordinance having the force of law." Dunn, 722 F. Supp. at 1311 (describing Pittman, 839 F.2d at 225). In that case, the plaintiff was determined to be "an at-will employee with no property interest in his employment." Id.

In Royster, a case involving a public school employee, the Fourth Circuit Court of Appeals considered whether the plaintiff's interest in continued employment "included not only the right to receive the compensation guaranteed under the contract, but also the right to actively engage in and execute the duties of his office." 774 F.2d at 621. The court found that it did not. Id. Although the public school breached its contract with the plaintiff by denying him from certain job-related tasks, the public school did not deny any of his substantive due process rights. Id. ("[N]ot every beach of a public employment contract amounts to a constitutional violation."); see also Jensen v. W. Carolina Univ., No. 2:11-CV-33, 2012 WL 6728360, at *16 (W.D.N.C. Dec. 28, 2012) (finding no federal substantive due process right implicated where, after a period of paid administrative leave, plaintiff "was returned to his normal position with the only change being his not being allowed on campus"); N.C. Supported Emp't v. N.C. Dep't of Health and Human Servs., No. 5:10-CV-135-FL,

16

2010 WL 4696556, at *5 (E.D.N.C. Nov. 12, 2010) ("[P]laintiffs had failed to allege that [one plaintiff]'s contract with the State was a property interest protected by procedural due process.").

Defendants never went so far as to terminate plaintiff's employment. Rather, faced with a work assignment requiring a six-hour round-trip commute, "[p]laintiff was thus left with two choices[:] . . . take a seven month unpaid leave of absence . . . or exhaust her accumulated vacation and sick leave." (DE 3-1 ¶ 164). Plaintiff chose the second option for a period of months, and then elected the first option for another period of months, before finally returning to full duty status.

Accordingly, plaintiff does not argue deprivation of a fundamental right to continued public employment, but instead argues defendants deprived her of three fundamental rights embedded within her state contract right to continued employment. First, plaintiff's claim to a property interest in the benefits of defendant ALE's de facto light duty regime arises from her employment relationship with defendant ALE; second, her claim to a liberty interest in being free from arbitrary government interference with her pregnancy similarly relates only to defendant ALE's treatment of her as an ALE employee; and third, her claim to a property interest in accumulated vacation and sick leave derives from a state statute governing state employees, not federal employees.

These alleged fundamental rights represent disfavored "entitlements within entitlements to perform specific functions," which, as explained above, courts are "reluctant to recognize multiple property interests within the same employment relationship." See Fields, 909 F.2d at 97. Plaintiff does not have a fundamental federal right to continued public employment, Huang, 902 F.2d at 1142 n.10 (noting that plaintiff's "entitlement to a [public employment] position . . . if it exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution"), and therefore her claims of entitlements based upon an alleged fundamental right to continued public

employment rest upon shaky ground at best.

Both parties compare plaintiff's alleged facts to the situation in Huang, in which the court found that inter-departmental transfer of a tenured university professor did not implicate a constitutionally protected property interest where the professor merely was assigned different duties while retaining the same level of compensation. 902 F.2d at 1141–42. Plaintiff's attempt to distinguish her case from the facts of Huang is unavailing where plaintiff similarly was reassigned to different duties, which led to her taking leave. Although her second period of leave was unpaid, she remained employed during both periods of leave, and she was able to return to full duty status upon their completion. In addition, Huang relies on cases from other circuits that show such treatment does not implicate a fundamental right. See id. at 1142 (citing Maples v. Martin, 858 F.2d 1546, 1550–51 (11th Cir. 1988) (finding professors had no property interest in not being transferred outside of department); Garvie v. Jackson, 845 F.2d 647, 651 (6th Cir. 1988) (demoting department chairman to professor not a denial of a protected property interest); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (reducing graduate student's teaching duties not a denial of a protected property interest)).

Furthermore, the analysis in Huang cuts against plaintiff's claim of a liberty interest in the right to be free from arbitrary state interference during the term of her pregnancy. The plaintiff in Huang argued that his inter-departmental transfer violated his substantive due process right to continued employment "free from arbitrary state action." Huang, 902 F.2d at 1142. But the court held that, even if a public employee had a substantive due process right to continued public employment, evidence that an employment action was unwise or mistaken is not sufficient to support a substantive due process claim. Id. (citing Bishop v. Wood, 426 U.S. 341, 350 (1976)).

18

Similarly, here, plaintiff's allegations that defendants acted wrongly toward her due to personal ill will still are insufficient to create a fundamental right to be pregnant while maintaining continued public employment free from arbitrary state action.

Plaintiff's reliance upon cases such as Griswold v. Connecticut, 381 U.S. 479 (1965) and Roe v. Wade, 410 U.S. 113 (1973) in support of her alleged liberty interest is misplaced. Although plaintiff accurately identifies the right to have children as a fundamental right under the U.S. Constitution, that right is different than the right plaintiff asserts here. For example, in Roe, the Court "conclude[d] that the right of personal privacy includes the abortion decision, but that this right is not unqualified and must be considered against important state interests in regulation." 410 U.S. at 154. By contrast, plaintiff asserts a right "to bear children without being subjected therefore to arbitrary, coercive, and vindictive government action" within the context of her entitlement to continued public employment. (DE 34, 9). The right found in Roe involves a fundamental right "at the very heart of [a] cluster of constitutionally protected choices," Carey v. Population Servs. Int'l, 431 U.S. 678, 685 (1977), whereas plaintiff's asserted rights arise from a state employment contract and ALE's unofficial de facto light duty policy for pregnant special agents.

Plaintiff's alleged rights to perform de facto light duty and receive particular benefits as part of her alleged right to continued public employment with ALE represent entitlements within an entitlement. See Fields, 909 F.2d at 97. Such rights are not fundamental rights for purposes of the Due Process Clause of the U.S. Constitution. See id.; Huang, 902 F.3d at 1141. Accordingly, defendants' motion to dismiss plaintiff's claim for violation of substantive due process must be granted.

2. Equal Protection Claim Under the U.S. Constitution

Plaintiff asserts an equal protection claim against individual defendants in their individual capacities. Defendants argue that plaintiff's claim fails where it is based on a class-of-one theory. Plaintiff responds that there are valid factual questions regarding whether she has satisfied certain elements of the claim, such as being similarly situated to a protected class.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

The class-of-one theory of equal protection "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605 (2008). The United States Supreme Court considered this theory when a public employee alleged that she was terminated not because she was a member of an identified class, but simply for irrational and vindictive reasons. Id. at 594–95. The Court held that "the class-of-one theory of equal protection has no application in the public employment context." Engquist, 553 U.S. at 605 (finding the class-of-one theory inapplicable "where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner"); accord Munn-Goins v. Bd. of Trs. of Bladen Cmty. Coll., 658 F. Supp.2d 713, 729 (E.D.N.C. 2009).

Many states have statutory schemes protecting public employees from discharge for impermissible reasons, "[b]ut a government's decision to limit the ability of public employers to fire

20

at will is an act of legislative grace, not constitutional mandate." Engquist, 553 U.S. at 606–07.

"Public employees typically have a variety of protections from . . . personnel actions," but "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Id. at 609 (quotations omitted). Accordingly, plaintiff's claim for violation of her rights under the Equal Protection Clause of the U.S. Constitution must be dismissed.

The cases plaintiff relies upon in her response are inapposite on this point. The first case, Village of Willowbrook v. Olech, 528 U.S. 562 (2000), recognized the class-of-one theory in the context of property assessment and taxation schemes. Id. at 564. There, the Court found significant that "[t]here was no indication . . . that the zoning board was exercising discretionary authority based on subjective, individualized determinations—at least not with regard to easement length." Engquist, 553 U.S. at 602–03 (describing Olech, 538 U.S. at 565). Plaintiff's second supporting case, Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923), turned on similarly inapplicable reasoning. Engquist, 553 U.S. at 603 ("Sioux City Bridge, also cited in Olech, was the same sort of case, recognizing an equal protection claim when one taxpayer's property was assessed at 100 percent of its value, while all other property was assessed at 55 percent, without regard to articulated differences in the properties.") (citing Sioux City Bridge Co., 260 U.S. at 445–47).

The de facto light duty regime at issue here was not applied according to a clear, non-discretionary standard akin to the required easement lengths in Olech, or the property assessment criteria in Sioux City Bridge Co. Plaintiff's description of the different treatment received by pregnant ALE employees is evidence that application of this regime involved significant discretion. In fact, plaintiff alleges that it was defendants' exercise of discretion that led to her being treated

differently. Although a court might find that plaintiff accurately identified a class of pregnant ALE employees, plaintiff's argument that she alone received unique treatment within that class relies upon a theory that she occupies a class of one. Plaintiff's theory does not support an equal protection claim in the context of public employment, see Engquist, 553 U.S. at 605, and therefore plaintiff's claim must be dismissed.

      3.      § 1983 Claim

Plaintiff asserts a claim under § 1983 as against individual defendants in their individual capacities. Defendants argue qualified immunity applies as to plaintiff's § 1983 claim for violation of her alleged constitutional rights.

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lloyd v. MacNeish, No. 5:12-CT-3163-FL, 2015 WL 1391476, at *6 (E.D.N.C. Mar. 25, 2015). "In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct." Lloyd, 2015 WL 1391476, at *6 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "Only if the plaintiff has alleged a violation of a clearly established right should the court next determine whether a reasonable person in the official's position would have known that his actions violated that right." Peterson v. Reid, No. 5:06-CT-3026-FL, 2007 WL 4945985, at *2 (E.D.N.C. Feb. 27, 2007) (citing DiMeglio v. Haines, 45 F.3d 790, 794 n.1 (4th Cir. 1995)). For example, failure to demonstrate a substantive due process violation may entitle government defendants to qualified immunity. See e.g., Lloyd, 2015 WL

1391476, at *12.

In this case, the court finds that plaintiff failed to state a claim for violation of her rights under the Due Process Clause. Therefore, defendants did not violate a clearly established constitutional right. See Harlow, 457 U.S. at 818. As a result, defendants are entitled to qualified immunity, and plaintiff's § 1983 claim must be dismissed.

    4.     Remaining State Law Claims

28 U.S.C. § 1367(c) authorizes a federal court to remand cases removed from state court. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001). In exercising this authority, a district court must decide "whether to continue exercising federal jurisdiction over pendent claims and whether to remand the case to State court." Id. The first decision requires satisfying a basis listed in § 1337(c). Id. For example, pursuant to § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); Jones v. Wallace, No. 5:10-CT-3223-FL, 2015 WL 1387930, at *10–11 (E.D.N.C. Mar. 25, 2015); Settle v. Examination Mgmt. Servs., Inc., No. 5:15-CV-171-FL, 2015 WL 6457218, at *2–3 (E.D.N.C. Oct. 26, 2015).

The second decision requires consideration of "principles of economy, convenience, fairness, and comity." Hinson, 239 F.3d at 617 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)). For example, remand is fair in cases where "[s]tate court is the proper forum to explore the full nature of the employer-employee relationship, including the extent to which the state has failed in any way to adhere to employment contract provisions with respect to [the plaintiff's employment] status." Fields, 909 F.2d at 98.

Plaintiff voluntarily dismisses several federal law claims, including: a claim under Title VII of the Civil Rights Act, as against all defendants; and claims made under the Due Process and Equal Protection Clauses of the U.S. Constitution as they relate to defendant state agencies and individual defendants, in their official capacities. Because the court resolves by dismissal plaintiff's other federal claims in the instant order, only plaintiff's state law claims remain, namely: claims for violations of procedural and substantive due process rights under the N.C. Constitution, as against defendant state agencies, and individual defendants in their individual and official capacities; a claim for violation of the Equal Protection Clause of the N.C. Constitution, as against defendant state agencies, and individual defendants in their individual and official capacities; a claim for civil conspiracy under North Carolina law, as against individual defendants in their individual capacities; and a claim for breach of contract under North Carolina law, as against defendant state agencies.

This court has original jurisdiction over plaintiff's Due Process, Equal Protection, and § 1983 claims because they implicate federal law and the U.S. Constitution. See 28 U.S.C. § 1331. For the reasons stated above, these claims must be dismissed for failure to state claims upon which relief may be granted, leaving only claims arising under North Carolina law. Accordingly, the court declines to exercise supplemental jurisdiction over the remaining state law claims. See Shanaghan, 58 F.3d at 110; Sansotta v. Town of Nags Head, 863 F. Supp. 2d 495, 514–15 (E.D.N.C. 2012) aff'd in part, rev'd in part, 724 F.3d 533 (4th Cir. 2013) ("The elimination of all federal claims before trial is generally a sufficient ground in itself for declining supplemental jurisdiction over pendent state-law claims.").

"[P]rinciples of economy, convenience, fairness, and comity" favor remanding plaintiff's state law claims. See Hinson, 239 F.3d at 617 (citing Cohill, 484 U.S. at 357). Fairness favors

24

remand to a North Carolina court where, as here, the claims center upon the nature of an employer-employee relationship involving North Carolina state agency employers and a North Carolina state agency employee. See Fields, 909 F.2d at 98. Having considered and dismissed plaintiff's federal law claims, state law claims now predominate such that comity considerations support remand as well. See Shavitz v. City of High Point, 270 F. Supp. 2d 702, 730–31 (M.D.N.C. 2003). Furthermore, convenience is served, in that plaintiff's state law claims remain unobstructed by statutes of limitations, and in that plaintiff initially elected to file suit in North Carolina state court. See id. At this early stage in the litigation, where minimal federal resources have been expended, and the dispute is between two citizens of the same state, judicial economy is served by remanding the case to state court. See Troy v. United States, No. 7:14-CV-193-FL, 2015 WL 2165990, at *7 (E.D.N.C. May 8, 2015). Accordingly, the court remands plaintiff's remaining claims arising under North Carolina state law.

## CONCLUSION

Based on the foregoing discussion, defendants' motion to dismiss is GRANTED, with respect to plaintiff's claims made pursuant to federal law and the U.S. Constitution. (DE 24). Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, and such remaining claims are REMANDED to the Superior Court of Cateret County, North Carolina. The clerk is DIRECTED to close the case.

SO ORDERED, this the 19th day of January, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge